**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

JOSEPH R. TOMELLERI,

*Plaintiff,*

CASE NO. 1:23-cv-10370

*v.*

District Judge Thomas L. Ludington
Magistrate Judge Patricia T. Morris

SUNFROG, LLC;
SUNFROG STAFFING, LLC;
MERCHPOND
MANUFACTURING, LLC;

*Defendants.*
__________________________________/

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS (ECF No. 13)**

## I. RECOMMENDATION

For the following reasons, **I RECOMMEND** that the Court **GRANT** Defendants' motion to dismiss (ECF No. 13) and **DISMISS** Plaintiff's complaint **WITHOUT PREJUDICE**.

## II. REPORT

### A. Introduction

Joseph Tomelleri is a well-respected illustrator of freshwater fish. After learning that four of his illustrations had been copied onto T-shirts, tumblers, and other merchandise available for purchase on a website called "SunFrog," Tomelleri

brought this copyright infringement action against the website's owners.

How, exactly, did the owners violate Tomelleri's copyrights? Tomelleri does not say. Providing almost no information about the website, Tomelleri does not allege that the Defendants, themselves, created and listed the infringing merchandise. Nor does he allege that the Defendants either encouraged or ignored a third-party who uploaded the infringing products to SunFrog. Instead, Tomelleri asks the Court to deduce that the Defendants infringed his copyrights from the sheer fact that his illustrations appeared on their website. That is not enough to plausibly allege copyright infringement, and I recommend that the Court dismiss Tomelleri's complaint without prejudice.

**B. Background**

A big fish in a small pond, Joseph Tomelleri is—in his own words—"one of the world's best fresh water fish illustrators." (ECF No. 1, PageID.2, ¶ 9). Having spent his thirty-five year career as a biologist "collecting, studying, and illustrating" various "North American fish species," Tomelleri has built portfolio of over 1,300 unique illustrations. ((*Id.* at PageID.2–3, ¶¶ 9–10). Many of these illustrations have been published in "scientific studies, journals, books, magazines, and fish identification guides." (*Id.* at PageID.2–3, ¶ 15). Though his images are life-like, Tomelleri makes creative decisions in each of his illustrations, incorporating his own "expression" into various species of the fish, such as their "color patterns" or "fin

arrangements." (*Id.* at PageID.2, ¶ 14; *see* ECF No. 1-1, PageID.6).

At some point, Tomelleri learned that four of his illustrations—two distinct images of walleyes and two distinct images of black crappies—had been displayed on a website called "SunFrog" without his permission. (ECF No. 1, PageID.3, ¶¶ 19, 21–24). Having registered each of these illustrations with the United States Copyright Office, Tomelleri filed this copyright infringement action against four companies that he alleges jointly operate the SunFrog website. (*Id.* at PageID.3–4, ¶¶ 18–19, 27). *See generally* 17 U.S.C. § 411(a) (2018) (providing that registering a "copyright claim" is a prerequisite to filing a civil action).

Tomelleri's complaint is light on detail. He alleges that the Defendants are "in the business of marketing, promoting, advertising, and selling apparel," such as "t-shirts" and "tumblers," on their website. (ECF No. 1, PageID.3, ¶¶ 20–21, 24). And some of these products, according to Tomelleri, displayed his illustrations "or their derivatives . . . ." (*Id.* at PageID.3–4, ¶¶ 16, 20–24, 28–30). Tomelleri attached a copy of each allegedly infringed illustration to his complaint. (ECF No. 1-1, PageID.6). Tomelleri does not discuss the Defendants, their business, or the infringing products in any further detail. (ECF No. 1).

The Defendants have now moved to dismiss Tomelleri's complaint for failure to state a plausible claim for relief under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 13).

**C. Standard of Review**

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, a plaintiff's complaint shall be dismissed for failure to state a claim if it lacks sufficient "factual matter (taken as true) to" provide "plausible grounds to infer" that the elements of a claim for relief could be met. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see* Fed. R. Civ. P. 12(b)(6). A complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere labels, conclusory statements, or "formulaic recitations" of the elements of a cause of action are not sufficient to meet this burden if they are unsupported by adequate factual allegations. *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The requirement to provide a plausible claim does not require that a claim be "probable"; however, a claim must be more than merely "conceivable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009).

**D. Analysis**

The Copyright Act grants authors of original works in the arts and sciences a "limited monopoly" over their creations. *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 429 (1984); *Fogerty v. MGM Grp. Holdings Corp., Inc.*, 379 F.3d 348, 352 (6th Cir. 2004); *see* U.S. Const. art. I, § 8, cl. 8. The Act applies to any "original work of authorship" across a wide array of mediums: original

expressions of music, film, art, literature, and nonfiction writing—to name just a few categories—are all copyrightable. *See* 17 U.S.C. § 102(a) (2018). And the monopoly it creates is comprised of "bundle" of rights that exclusively belong to the author. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258, 1273 (2023). Authors of original works—and those authors alone—have, for example, the right "to reproduce the copyrighted work," "to prepare derivative works based upon the copyrighted work," and "to distribute copies of the work . . . ." 17 U.S.C. § 106(1)–(3) (2018).

Where individuals or organizations use a copyrighted work in a manner reserved for the copyright holder, the Act allows the copyright holder to bring a civil action against the infringer. 17 U.S.C. § 501(a)–(b) (2018). To succeed in such an action, the copyright holder must prove two elements. First, the copyright holder must prove that it owned "a valid copyright" over some aspect of the work in question. *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999). And second, the copyright holder must prove that "the alleged infringer copied constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). That is, the alleged infringer must have availed itself of a right belonging solely to the copyright holder. *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 n.2 (10th Cir. 1996).

The Defendants here only dispute whether Tomelleri has plausibly alleged that they "copied" his illustrations.[1] (ECF No. 13). That requires the Court to answer two distinct questions. First, has Tomelleri alleged enough facts for the Court to plausibly infer that the reproductions of his work on the SunFrog website were "copies" of his original illustrations. And if so, does Tomelleri plausibly allege that the Defendants, rather than some third party, are responsible for the infringing works.

**1. Whether Tomelleri Plausibly Alleges That His Pictures Were Copied**

As its name might suggest, the Copyright Act forbids "copying." One who independently creates a work that happens to already exist is not liable for infringement. *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1169 (7th Cir. Dec. 1997); *see Feist*, 499 U.S. at 345–46; *Ellis*, 177 F.3d at 507. In fact, that later, identical work would also be protected by copyright. *Mag Jewelry Co., Inc. v.*

[1] Although Defendants implicitly concede that Tomelleri held a valid copyright in his illustrations, the scope of that right might be "thin." *Tomelleri v. Zazzle, Inc.*, No. 13-CV-02576, 2015 WL 8375083, at *8–9 (D. Kan. Dec. 9, 2015) (internal quotation marks omitted). Only original works—works with some "minimal degree of creativity"—are copyrightable, and only those specific elements of the work that are original can be copyrighted. *Feist*, 499 U.S. at 345, 348–49. Thus, no artist can use copyright law to prevent others from depicting the likeness "of animals in their natural surroundings." *Satava v. Lowry*, 323 F.3d 805, 810–13 (9th Cir. 2003). Only the artist's expressive choices: "the pose, attitude, gesture, muscle structure, facial expression, coat, or texture of animal" can be protected. *Id.* at 813. And the closer the artist's depiction of the animal is to its natural likeness, the more subtle these artistic choices become. *See id.*; *Tomelleri*, 2015 WL 8375083, at *9.

*Cherokee, Inc.*, 496 F.3d 108, 496 F.3d 108, 116 (1st Cir. 2007). So to prevail on an infringement claim, a copyright holder must not only show that a subsequent work contains elements that are identical to the earlier work, but that the alleged infringer also knew of the earlier work. *See Ellis*, 177 F.3d at 506–07.

A plaintiff can prove infringement by presenting direct evidence of copying to a factfinder. *Id.* at 506. But such evidence is rare. So more often, copyright holders rely on circumstantial evidence of infringement to survive summary judgment. *Id.* For a reasonable factfinder to infer that a defendant copied the plaintiff's work, the plaintiff must present evidence that (1) the allegedly infringing work bore a "substantial similarity" to the plaintiff's original work, and (2) the alleged infringer had "access" to the plaintiff's work—that is, the defendant had an opportunity to copy the plaintiff's work. *Fogerty*, 379 F.3d at 352. Sometimes, though, the similarity between two works can also serve as evidence of access. "The more a work is both like an already copyrighted work and . . . unlike anything that is in the public domain, the less likely it is to be an independent creation." *Ty, Inc.*, 132 F.3d at 1169–71 (emphasis removed). Some works may be so "strikingly similar, and so unique from anything else in the public domain, that a reasonable factfinder can infer access (and by extension, copying) from the works' similarity. *Id.* at 1170; *see also Fogerty*, 379 F.3d at 352. In any event, once a plaintiff presents evidence of similarity and access, "the defendant may rebut the presumption of

copying by showing independent creation of the allegedly infringing work." *Fogerty*, 379 F.3d at 352 (citing *Ellis*, 177 F.3d at 507).

Of course, those are evidentiary standards, not pleading requirements. And to be sure, courts should not rigidly apply such standards at the pleading stage. *Martinez v. McGraw*, No. 10-5594, 2011 WL 13394623, at *2 (6th Cir. Aug. 23, 2011); *cf. Keys v. Humana*, 684 F.3d 605, 609 (6th Cir. 2012) (holding that the *McDonnell Douglas* burden-shifting scheme does not apply at the pleading stage in employment discrimination actions). Indeed, a plaintiff who alleges a prima facie case of copying may ultimately plead more facts than he or she need to prove if the plaintiff later uncovers direct evidence of copying through discovery. *See Swierkiewicz v. Sorema N.A.*, 514 U.S. 506, 511–12 (2002). So for pleading purposes, a plaintiff alleging copyright infringement need only "raise a reasonable expectation that discovery will reveal evidence of" copying. *Nat'l Bus. Dev. Servs., Inc. v. American Credit Educ. and Consulting, Inc.*, 299 F. App'x 509, 512 (6th Cir. 2008).

Still, the prima facie standard for proving copying highlights the kinds of factors that are relevant when assessing a complaint's plausibility. Facts concerning the similarity between the works, as well as the defendants' access to the plaintiff's work, provide the sort of information that a plaintiff must allege to plausibly "show" that he or she is entitled to relief. *See, e.g.*, *R.S. Scott Assocs., Inc. v. Timm Const. Co. LLC*, No. 14-cv-13338, 2014 WL 7184448, at *4 (E.D. Mich. Dec. 16, 2014);

*Martinez*, 2011 WL 13394623, at *2. Thus, in practice, plaintiffs may often need to allege facts that track the elements of a prima facie case to plausibly allege copying.

Although Tomelleri spills little ink discussing the allegedly infringing works, he alleges enough information to "raise a reasonable expectation" that he might uncover evidence of copying through discovery. *Nat'l Bus.*, 299 F. App'x at 512. In other words, taking his allegations at face value, Tomelleri plausibly alleges that the images displayed on the Defendants' website were copies of his work. Tomelleri alleges that the images on SunFrog are of "products" (such as "t-shirts" and "tumblers") that display either Tomelleri's "illustrations or their derivatives." (ECF No. 1, PageID.3, ¶¶ 22–24; *see also id.* at PageID.4, ¶ 29). And earlier in his complaint, Tomelleri defines the term "illustrations" as the four fish illustrations "at issue in this case" and he attaches a copy of each illustration to his complaint. (*Id.* at PageID.3, ¶¶ 16–19; ECF No. 1-1, PageID.6).

A fair reading of Tomelleri's complaint is that he alleges two alternative claims: (1) that the Defendants infringed his exclusive right to prepare derivative works and (2) that that the Defendants infringed his rights to display, distribute, and reproduce his original work. *See* 17 U.S.C. § 106(1)–(3); (ECF No. 1, PageID.3–4, ¶¶ 22, 28–30). Indeed, Tomelleri accuses the Defendants of displaying his "[i]llustrations *or* their derivatives." (ECF No. 1, PageID.2, ¶ 22 (emphasis added)). The Rules of Civil Procedure allow this sort of alternative pleading. *See* Fed. R.

Civ. P. 8(d)(2).[2]

A "derivative" work is one that "recast[s], transform[s], or adap[t]s" some expression from an earlier work. 17 U.S.C. § 101 (2018). Though derivative works are protected by their own copyright, the author of the original work has the exclusive right to create works that are derivative of the original. *Id.* §§ 103(a)–(b), 106(2). Of course, broadly describing the images on the SunFrog merchandise as "derivative" is a legal conclusion, and the Court cannot accept this allegation without any factual development. *Twombly*, 550 U.S. at 555. Tomelleri needs to allege facts that establish *how* these works are derivative of his illustrations. And because his illustrations are of walleyes and black crappies, he likely needs to allege enough facts to show that the images displayed on the products are derivative of his specific works, and not just these fish in general. *See Satava*, 323 F.3d at 810–13. Insofar as Tomelleri alleges that the merchandise available on SunFrog contained images that were derivative of his illustrations, he fails to plausibly allege copying.

But to the extent Tomelleri alleges that the products on SunFrog were

[2] Some courts hold that Rule 8(d)(2) does not apply where a plaintiff alleges inconsistent facts in support of a single, unitary claim, reasoning that the Rule only allows plaintiffs to alternatively allege inconsistent claims. *E.g.*, *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 406–07 (S.D.N.Y. 2001). This distinction does not matter here. The rights to reproduce original works, distribute original works, and prepare derivative works based on the original are distinct rights that underly distinct claims. *See* 17 U.S.C. §§ 106(1)–(3), 501(a); *Claim*, Black's Law Dictionary (11th ed. 2019). It also makes no difference that Tomelleri lumps each of these claims under a single count, as Rule 8(d)(2) explicitly permits him to do so. Fed. R. Civ. P. 8(d)(2).

"derivative" of his work because they contained exact, carbon-copies of his illustrations, he does plausibly allege copying. Tomelleri attaches a copy of each illustration to his complaint, and he alleges that those exact images appeared on merchandise for sale on SunFrog. (ECF No. 1, PageID.3, ¶¶ 16–19, 22–24). Taking these facts as true, Tomelleri alleges enough of a striking similarity for the Court to plausibly infer that the images displayed on SunFrog were copies of his illustrations. *See Fogerty*, 379 F.3d at 352. Thus, Tomelleri plausibly alleges that the works displayed on the website infringed his rights to reproduce, distribute, and prepare derivatives. *Cf. Vrachovska v. Beacoz*, LLC, No. 19-13573, 2019 WL 2266840, at *3 (E.D. Mich. May 28, 2019) (finding that a plaintiff alleged a striking similarity between two photographs by showing that they were "identical in every respect"); *Humantech v. Caterpillar, Inc.*, No. 11-14988, 2012 WL 3888149, at *5 (E.D. Mich. Sept 7, 2012) (explaining that it is not necessary for a complaint to include a "comprehensive list of" the "exact[]" infringing works where a plaintiff alleges that his or her works were reproduced "wholesale").

Still, the Defendants would have Tomelleri show even more. They argue, for example, that Tomelleri's complaint is deficient because he has neither "stated when the infringement occurred" nor specified the infringing products beyond simply describing the "types" of products his work appeared on. (ECF No. 13, PageID.47–48). But why does any of that matter? That degree of specificity is not necessary to

allege that whoever posted the illustrations on SunFrog had access to Tomelleri's work and produced a similar copy. *See Humantech*, 2012 WL 3888149, at *5; *Martinez*, 2011 WL 13394623, at *2. And Defendants do not attempt to explain how these exacting requirements follow from any legal standard. As a result, they also provide no limiting principles for their argument. It is not enough for Tomelleri to allege that the Defendants displayed an exact copy of his illustrations on tumblers, but what if he alleged their size, or their color, or the total quantity of tumblers sold? Just how thin do we slice the salami?

Defendants provide no answers. Instead, they reason that the Court must require Tomelleri to plead these extraneous facts because setting the "bar for pleading too low" might flood the courts with a slew of meritless copyright infringement actions. For support, they rely on the Sixth Circuit's opinion in *National Business*, 299 F. App'x 509.[3] But the Court in *National Business* did not impose such a demanding pleading requirement.

In *National Business*, a company who had developed a "series of educational material" designed to "help[] consumers . . . repair their credit history" sued a group of twelve defendants it accused of incorporating its materials into their own

[3] Defendants' reply brief reveals that their counsel believes this Court is bound by the Sixth Circuit's opinion in *National Business*. (ECF No. 17, PageID.114–15). It is not. *National Business*, like any other opinion in the Federal Appendix, is unpublished, and only published decisions from the Sixth Circuit are binding on this Court. *Sun Life Assurance Co. v. Jackson*, 877 F.3d 698, 702 (6th Cir. 2017).

"brochures" and "educational materials." 299 F. App'x at 510–11. The Sixth Circuit held that these allegations did not state a plausible claim for relief because they did not specify how the company's copyrighted works were incorporated into the Defendants' materials. *Id.* at 512. Specifically, it noted that the company neither identified "a work produced by [the] [d]efendants" nor described "the manner in which" the defendants' work had infringed on the company's original work. *Id.*

Those were not arbitrary concerns. The company's failure to plead *any* facts concerning the infringing works prevented the Court from inferring that those works were copies. Their scant allegations, as the Court put it, only showed that the defendants "may have produced some work that in some way infringed upon" the company's materials. *Id.* But here, unlike in *National Business*, Tomelleri pleads enough facts to plausibly show copying.

Sure, the Sixth Circuit did express concerns that copyright actions "readily" lend themselves "to abusive litigation." *Id.* But its solution to that problem was not to require plaintiffs to pled minutiae beyond the facts necessary to allow the inference of copying. Rather, the Court's answer was to hold copyright plaintiffs to the same plausibility standard that applies in all other civil actions, instead of the relaxed pleading standard typically applied to pro se complaints, which the Court had been asked to extend to the copyright context. *Id.* (citing *Erickson v. Pardus*, 551 U.S. 89, 93–95 (2007)) (holding that represented plaintiffs in copyright

infringement actions must demonstrate "greater particularity in pleading" than a pro se litigant).

Accordingly, I suggest that Tomelleri plausibly alleges that the works displayed on the SunFrog website were copies of his original illustrations.

**2. Whether Tomelleri Plausibly Alleges That the Defendants Are Responsible For the Infringing Products**

But it is not enough for Tomelleri to allege that copies of his work appeared on the Defendants' website. He must also allege facts establishing how the Defendants are responsible for the infringing works. And on that detail, Tomelleri's complaint falls short.

Copyright infringement, like any other tort, "requires the plaintiff to show causation . . . ." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017). The Copyright Act holds "[a]nyone who violates the exclusive rights of the copyright owner" liable for infringement, and there are a few ways a plaintiff can show that a defendant "violated" his or her exclusive rights. 17 U.S.C. § 501(a). First, an author of a copyrighted work can prove that the defendant directly interfered with their rights. That is, the defendant, itself, performed the infringing act. *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 802 (6th Cir. 2005). But even where the defendant did not perform the infringing act, there are two situations where the copyright holder can hold the defendant liable for indirectly violating his or her exclusive rights. The first, known as "contributory infringement," occurs

where one "intentionally induc[es]" or "encourage[es]" another to directly infringe a copyright. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005); *see also Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 401 (6th Cir. 2007). The second situation, by contrast, applies to entities who allow copyright infringement to occur through their own inaction. Entities who "profit[] from . . . infringement while declining to exercise a right to stop or limit it" can be held vicariously liable for the infringing conduct. *Broadcast Music, Inc. v. Meadowlake, Ltd.*, 754 F.3d 353, 354 (6th Cir. 2014).

The problem for Tomelleri is that he does not provide enough facts to show that the Defendants are liable under any of these tests. He alleges that the "Defendants are in the business of marketing, promoting, advertising, and selling apparel." (ECF No. 1, PageID.3, ¶ 20). To that end, he also alleges that the Defendants "maintain" a website which "display[ed]" his illustrations. (*Id.* at PageID.3, ¶ 21). But without more, simply alleging that his illustrations appeared on the Defendants' website does not imply that the Defendants were directly, contributorily, or vicariously liable for the infringing works.

That is because online merchants like SunFrog provide a wide variety of services subject to different modes of liability. Not every company that displays goods online also designs, manufactures, and sells its own products. Some websites simply facilitate online marketplaces—think of Amazon, Facebook Marketplace, or

eBay. These companies do not sell their own products; rather, they act as agents who connect suppliers with interested consumers. *See, e.g.*, *Tre Milano, LLC v. Amazon.Com, Inc.*, B234753, 2012 WL 3594380, at *11 (Cal. Ct. App. Aug. 22, 2012); *George & Co., LLC v. Alibaba.com*, No. 2:10-cv-719, 2011 WL 6181940, at *1–2 & n.1 (M.D. Fla. Dec. 13, 2011); *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1094 (C.D. Cal. 2001). Other websites, known as "print on demand" companies, provide a hybrid service, acting as manufacturers in some respects, while acting as online marketplaces in others. These companies allow users to design products (often apparel) and post those products on the company's website for purchase by the public. When an interested consumer places an order, the print-on-demand company manufactures a unit of the seller's product and delivers it to the buyer. *E.g.*, *Sid Avery and Assocs., Inc. v. Pixels.com*, LLC, 479 F. Supp. 3d 859, 862–63 (C.D. Cal. Aug. 18, 2020); *H-D USA, LLC, v. SunFrog, LLC*, 282 F. Supp. 3d 1055, 1057 (E.D. Wis. Oct. 4, 2017); *Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 908 (S.D. Ohio Apr. 18, 2014); *Tomelleri*, 2015 WL 8375083, at *3–4.[4]

---

[4] Defendants assert that SunFrog is a print-on-demand company. (ECF No. 13, PageID.50). To prove that point, they attach screenshots of the now defunct SunFrog website to their motion. (ECF Nos. 13-1, 13-2). Defense Counsel obtained these images, which purportedly display SunFrog as it existed several years ago, from an online archive of webpages called the "Wayback Machine." *Id.*; *see* Internet Archive, https://archive.org/ (last visited Oct. 24, 2023). Normally, a court's inquiry is limited to the four-corners of the complaint on a 12(b)(6) motion, but there are a few exceptions to this rule. *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011). Relevant here, courts

With this diverse array of online businesses in mind, the Court cannot plausibly infer that the Defendants directly infringed Tomelleri's copyrights just from the fact that his illustrations appeared on their website. *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim . . . requires the reviewing court to draw on its judicial experience and common sense."). Although Tomelleri alleges that the Defendants "market[]," "advertis[e]," and "sell[]" merchandise, he does not allege that they design, manufacture, or even select the products on their website. (ECF No. 1, PageID.3, ¶ 20). Sure, it is possible that the Defendants copied Tomelleri's illustrations themselves, but it is just as possible that

---

may consider (1) any fact appropriate for the taking of judicial notice or (2) any authenticated documents that are mentioned in the complaint and "central" to the plaintiff's claims. *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *see Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). As Defense Counsel correctly notes, some courts have taken judicial notice of websites on the Wayback Machine. *E.g.*, *Pond Guy, Inc. v. Aquascape Designs, Inc.*, No. 13-13229, 2014 WL 2863871, at *4 (E.D. Mich. June 24, 2014). But this issue is not as well settled as counsel suggests. Other courts have found materials from the Wayback Machine inappropriate for the taking of judicial notice, and have held that archives from the Wayback Machine may only be considered if they are mentioned in the complaint, central to the plaintiff's claims, and authenticated. *E.g.*, *Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 583-84 (5th Cir. 2022); *Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*, No. 16-21296, 2017 WL 3503371, at *7–8 (S.D. Fla. Aug. 15, 2017). I agree with this more cautious approach, and because Defendants have not authenticated their exhibits, I suggest that the exhibits cannot be considered on Defendants' motion to dismiss. The Court, then, must either exclude the exhibits from consideration or convert the Defendants' motion to one for summary judgment. Fed. R. Civ. P. 12(d). Because the Court need not consider these exhibits to resolve Defendants' motion, and because the Court cannot consider unauthenticated exhibits under Rule 56 either, I suggest that it exclude the exhibits from consideration. *Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009).

the infringing products were uploaded or supplied by a third party. *See George & Co.*, 2011 WL 6181940, at *2. In short, Tomelleri alleges only the "possibility" of direct infringement. Rule 8 requires more.

Nor does Tomelleri plausibly allege contributory or vicarious liability. To start, Tomelleri's vague description of Defendants' business does not establish whether these doctrines could even apply. And even if Tomelleri alleged that SunFrog was the type of business that could subject its owners to contributory or vicarious liability, he does not allege any facts that might satisfy either standard. He does not show how they might have induced or encouraged another to infringe Tomelleri's copyrights, as required to show contributory liability. *See Grokster*, 545 U.S. at 930. Nor does he allege that the Defendants "declined" to prevent a third party from infringing his copyright, as required to show vicarious liability. *See Broadcast Music*, 754 F.3d at 354.

Accordingly, Tomelleri fails to plausibly allege that the Defendants infringed his copyrights, and I recommend that the Court dismiss his complaint without prejudice. *See Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015) (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)) ("'[D]ismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment.'").[5]

[5] The Defendants raise two other arguments for dismissal, neither of which have merit.

**D. Conclusion**

For these reasons, **I RECOMMEND** that the Court **GRANT** Defendants' motion to dismiss (ECF No. 13).

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.

---

First, they argue that Tomelleri needed to allege that they were not shielded from liability by the Digital Millennium Copyright Act's ("DMCA's") "safe harbor" provisions. But the DMCA's safe harbor provisions are an affirmative defense, and plaintiffs need not anticipate affirmative defenses in their pleadings. *H-D USA*, 282 F. Supp. 3d at 1061; *see Long v. Dorset*, 369 F. Supp. 3d 939, 947 (N.D. Cal. Feb. 22, 2019). Second, Defendants argue that Tomelleri fails to allege a plausible claim for relief because he lobs his allegations against the Defendants as a monolithic group, without distinguishing their individual conduct. True enough, this sort of "group pleading" should raise eyebrows, and it sometimes requires greater particularity in pleading. *Mainstream Advertising, Inc. v. Moniker Online Servs., LLC*, No. 16-cv-61316, 2016 WL 4729647, at *5 (S.D. Fla. Sept. 12, 2016). But group pleading is not inherently improper, so long as the plaintiff plausibly alleges that each defendant is liable for the same conduct. *See Gold Crest, LLC v. Project Light LLC*, 525 F. Supp. 3d 826, 835 (citing *Hale v. Enerco Grp., Inc.*, No. 1:10-cv-00867-DAP, 2011 WL 49545, at *4 (N.D. Ohio Jan. 5, 2011)). At any rate, without a clear explanation of the Defendants' conduct, it is impossible to discern whether Tomelleri's combined allegations comport with Rule 8.

1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 30, 2023                s/ PATRICIA T. MORRIS
                                      Patricia T. Morris
                                      United States Magistrate Judge