UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSEPH R. TOMELLERI,

           Plaintiff,                              Case No. 1:23-cv-10370

v.                                                 Honorable Thomas L. Ludington
                                                        United States District Judge

SUNFROG, LLC, *et al*,

                                                       Honorable Patricia T. Morris
           Defendants.                       United States Magistrate Judge
_____/

**OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, GRANTING DEFENDANTS' MOTION TO DISMISS, AND DISMISSING CASE**

        Plaintiff Joseph R. Tomelleri is a highly regarded freshwater fish illustrator who copyrights his hand-drawn illustrations which incorporate a blend of his biology prowess and unique artistic expression. In February 2023, Plaintiff brought a copyright infringement claim against Defendants who operated the now-defunct website known as "SunFrog"—an online platform where third-parties could upload designs to be printed on items such as t-shirts, mugs, and tumblers. Plaintiff's five-page complaint alleged that four of his copyrighted illustrations or their derivatives appeared on SunFrog's website and subsequently sold products, without his authorization.

        In May 2023, Defendants filed a joint motion to dismiss which was referred to Magistrate Judge Patricia T. Morris. Judge Morris issued a report (R&R) which concluded that Plaintiff did not plausibly allege Defendants *directly* infringed on his copyrighted illustrations and did not plausibly allege that Defendants were *secondarily* liable for the infringement of third parties. Judge Morris accordingly recommended the dismissal of Plaintiff's complaint without prejudice.

In November 2023, Plaintiff filed five objections to the R&R. But, as explained below, Plaintiff's objections will be overruled, Judge Morris's R&R will be adopted, Defendants' motion to dismiss will be granted, and Plaintiff's complaint will be dismissed without prejudice.

I.

A.

Plaintiff Joseph R. Tomelleri represents himself as "an artist and a trained biologist" who is regarded as "one of the world's best fresh water fish illustrators." ECF No. 1 at PageID.2. Defendants SunFrog, LLC; Merchpond Manufacturing, LLC; SunFrog Solutions; SunFrog Fulfillment; SunFrog Wholesale; and SunFrog Staffing, LLC collectively operated as "SunFrog," a self-described print-on-demand online service provider based in Gaylord, Michigan, that allowed users to upload designs or artwork to merchandise such as t-shirts, sweatshirts, mugs, and tumblers. ECF Nos. 1 at PageID.2; 13 at PageID.50.

On February 10, 2023, Plaintiff sued Defendants for infringing on two of his copyrighted crappie[1] illustrations and two of his copyrighted walleye illustrations, in violation of 17 U.S.C. § 501. ECF No. 1. Plaintiff's copyrighted fish illustrations can be seen below:

---

[1] A crappie is a freshwater fish from North America, often prized by sport fisherman. *See Crappie*, BRITANNICA, https://www.britannica.com/animal/crappie (last visited Feb. 20, 2024) [https://perma.cc/WS58-A6PQ].







ECF No. 1-1. Plaintiff specifically alleges that Defendants displayed his copyrighted illustrations, or their derivatives, on SunFrog's website and sold them on "t-shirts, tumblers, and other products," without Plaintiff's authorization. ECF No. 1 at PageID.2–4.

On May 1, 2023, Defendants filed a joint motion to dismiss. ECF No.13. Defendants explained that, as an online print-on-demand servicer, "SunFrog's website content was supplied by its users." *Id.* at PageID.50. Thus, Plaintiff's copyrighted images "were uploaded by third party sellers, not by SunFrog, and those third-party sellers then selected the products on which they wanted those images to be displayed and sold to the public." *Id.* Defendants' Motion to Dismiss was referred to Magistrate Judge Patricia T. Morris. ECF No. 14. On October 30, 2023, Judge Morris issued a report (R&R) recommending this Court grant Defendants' Motion to Dismiss and dismiss Plaintiff's Complaint without prejudice. ECF No. 18. To understand Judge Morris's conclusions, and Plaintiffs' objections, ECF No. 18, some copyright context is in order.

**B.**

Copyright law's modern salience is matched only by its deep historical roots. The first state copyright statute, titled "An Act for the Encouragement of Literature and Genius," was passed by Connecticut in 1783. Benjamin W. Rudd, *Notable Dates in American Copyright 1783–1969*, 137, U.S. COPYRIGHT OFF., https://www.copyright.gov/history/dates.pdf (last visited Feb. 21, 2024) [https://perma.cc/JQD9-PTPH]. Later that year, the Continental Congress created a committee to ensure authors and publishers maintained ownership of their works. *Id.* James Madison was one of several individuals chosen to serve on this committee to "cherish[] genius." *Id.* When the Constitution was ratified, the framers added a clause within Article I, known as the "Copyright and Patent Clause," which authorizes Congress to "promote the [p]rogress of [s]cience and useful

[a]rts, by securing for limited [t]imes to [a]uthors and [i]nventors the exclusive [r]ight to their respective [w]ritings and [d]iscoveries[.]" U.S. CONST. art. I, § 8, cl. 8.

Throughout history, Congress has used its Copyright and Patent Clause power to confer mini-monopolies to authors, inventors, and—relevant here—artists. *Pollick v. Kimberly-Clark Corp.*, 817 F. Supp. 2d 1005, 1009 (E.D. Mich. 2011); *see also* Benjamin W. Rudd, *Notable Dates in American Copyright 1783–1969*, 137–42, U.S. COPYRIGHT OFF., https://www.copyright.gov/history/dates.pdf (last visited Feb. 21, 2024) (discussing historical expansion of copyright law to protect music, photographs, motion pictures, and performances) [https://perma.cc/JQD9-PTPH]. Importantly, authors and artists who copyright their work receive a "monopoly" over only their unique *expression* of an underlying idea, not the idea itself. *Mazer v. Stein*, 347 U.S. 201, 217 (1954). In this way, copyrights serve the dual purpose of protecting an artist's original creation while simultaneously "encourag[ing] others to build freely upon the ideas and information conveyed by a work." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) (quoting *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 349–350 (1991)).

The modern Copyright Act, 17 U.S.C. § 101 *et seq.*, provides a private right of action for copyright owners against "[a]nyone who violates any exclusive rights" provided to the owner under the Act, such as the right to reproduce or distribute the copyrighted work, or the right to prepare derivatives. *See* 17 U.S.C. §§ 501(a); 106(1)–(3); *see also Kremer v. Reddit, Inc.*, No. 2:21-CV-00038, 2022 WL 3702092, at *4 (M.D. Tenn. Aug. 26, 2022), *report and recommendation adopted*, No. 2:21-CV-00038, 2022 WL 4241273 (M.D. Tenn. Sept. 14, 2022) [hereinafter *Kremer*]. Under the Copyright Act, "[a]n individual can be liable for direct *or* secondary copyright infringement." *Kremer* at *4 (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)) (emphasis added).

Direct copyright infringement claims hold the specific infringer liable. *Id.* A plaintiff alleging direct copyright infringement must show (1) a valid copyright in the at-issue work; and (2) the defendant copied protected elements of that work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also Williams v. 3DExport*, No. 19-12240, 2020 WL 532418, at *3 (E.D. Mich. Feb. 3, 2020). "The first prong tests the originality and non-functionality of the work, both of which are presumptively established by the copyright registration. The second prong tests whether any copying occurred (a factual matter) and whether the portions of the work copied were entitled to copyright protection (a legal matter)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004). If no direct evidence of copying is available, a plaintiff can establish this second prong by showing the defendant had access to the copyrighted work and that the allegedly copied work is substantially similar to the copyrighted work. *Id.*

Unlike direct copyright infringement claims asserted against the infringer, a plaintiff may pursue secondary copyright infringement liability against those who have "not themselves engaged in the infringing activity" but are nevertheless liable under one or both of two predominant theories.[2] *Kremer* at *4 (quoting *Sony Corp. of Am. V. Universal City Studios, Inc.*, 464 U.S. 417, 435 (1984)). First, a party can be *contributorily* liable by "intentionally inducing or encouraging direct infringement," such as by advertising or instructing another to infringe. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005); *see also Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 398 (6th Cir.2007) ("Contributory infringement occurs when one, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another."). Second, a party can be *vicariously* liable by "profiting from direct

---

[2] Although the Copyright Act is silent on secondary infringement liability, "doctrines of secondary liability emerged from common law principles and are well-established in the law[.]" *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (citing *Sony Corp. v. Universal City Studios*, 464 U.S. 417, 486 (1984)).

infringement while declining to exercise a right to stop or limit it." *Grokster*, 545 U.S. at 930. Regardless of which theory is involved, secondary copyright infringement claims *depend* on direct copyright infringement claims. *Gray-El v. Jennifer Lopez/Nuyorican Prods.*, Inc., No. 19-10952, 2019 WL 8750506, at *14 (E.D. Mich. Dec. 18, 2019), *report and recommendation adopted sub nom. Gray-El v. Lopez*, No. 19-CV-10952, 2020 WL 1060642 (E.D. Mich. Mar. 5, 2020). In other words, a secondary copyright infringement claim will not survive a motion to dismiss if no direct infringement claim has plausibly been alleged. *Id.* ("Having found that [plaintiff] does not state a claim for direct copyright infringement, . . . the court recommends that his claims for secondary copyright infringement . . . should also be dismissed for failure to state a claim.")

With this copyright context, this Court turns to the R&R and Plaintiff's objections.

**C.**

Judge Morris described Plaintiff's Complaint as "light on detail" and noted it did "not discuss the Defendants, their business, or their infringing products" beyond alleging Defendants were based in Michigan; "in the business of marketing, promoting, advertising, and selling apparel"; and that some merchandise displayed his copyrighted illustrations or their derivatives. *Id.* at PageID.182 (citing ECF No. 1 at PageID.3–6). Indeed, Plaintiff's Complaint did not specify whether he was asserting *direct* or *secondary* copyright infringement claims against Defendants and, if the latter, under what theory. *See generally* ECF No. 1.

Beginning with direct copyright infringement, Judge Morris noted that the validity of Plaintiff's copyrighted illustrations is undisputed. ECF No. 18 at PageID.185. Turning to the second element of direct infringement, Judge Morris concluded that, although Plaintiff plausibly alleged Defendants' website displayed copies of his copyrighted illustrations, he did not plausibly allege that any Defendant was responsible. *Id.* at PageID.190–93 ("But it is not enough for

[Plaintiff] to allege that copies of his work appeared on the Defendants' website. He must also allege facts establishing how Defendants are responsible for infringing works. And on that detail, [Plaintiff's] complaint falls short."); PageID.197 ("In short, [Plaintiff] alleges only the 'possibility' of direct infringement. Rule 8 requires more."). Thus, Judge Morris concluded, Plaintiff had not stated a valid direct copyright infringement claim against Defendants. *See id.* at PageID.193.

Judge Morris proceeded to analyze secondary infringement liability, but concluded Plaintiff did "not provide enough facts to show that . . . Defendants are liable" under either secondary liability theory. *Id.* at PageID.194. Judge Morris wrote:

> [Plaintiff does not] plausibly allege contributory or vicarious liability. To start, [Plaintiff]'s vague description of Defendants' business does not establish whether these doctrines could even apply. And even if [Plaintiff] alleged that SunFrog was the type of business that could subject its owners to contributory or vicarious liability, he does not allege any facts that might satisfy either standard. He does not show how they might have induced or encouraged another to infringe [Plaintiff]'s copyrights, as required to show contributory liability. Nor does he allege that the Defendants 'declined' to prevent a third party from infringing his copyright, as required to show vicarious liability.

*Id.* at PageID.197. Concluding that Plaintiff had not plausibly pleaded direct or secondary copyright infringement, Judge Morris recommended this Court grant Defendants' Motion to Dismiss and dismiss Plaintiff's Complaint without prejudice. ECF No. 18 at PageID.180.

On November 13, 2023, Plaintiff filed five Objections to the R&R. ECF No. 19. Defendants responded the next day. ECF No. 20. Plaintiff replied on November 21, 2023. ECF No. 21.

## II.

### A.

Under Civil Rule 72, a party may object to and seek review of a magistrate judge's report and recommendation. *See* FED. R. CIV. P. 72(b)(2). The parties must state any objections with

specificity within a reasonable time. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted). Any objection which fails to identify specific portions of the R&R will not be reviewed. *See Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) ("A general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review[.]"); *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("A general objection . . . is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context."). Additionally, parties cannot "raise at the district court stage new arguments or issues that were not presented" before the R&R was issued. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

If a party makes a timely, specific objection, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). When reviewing a report and recommendation *de novo*, this Court must review at least the evidence that was before the magistrate judge. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, this Court is free to accept, reject, or modify the Magistrate Judge's findings or recommendations. FED. R. CIV. P. 72(b)(3); *Peek v. Comm'r of Soc. Sec.*, No. 1:20-CV-11290, 2021 WL 4145771, at *2 (E.D. Mich. Sept. 13, 2021).

**B.**

Under Civil Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) dismissal, the court accepts all factual allegations of the complaint as true and will construe the pleading in favor of the nonmovant. *See Lambert v.*

*Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). Consistent with Civil Rule 8(a)(2), the plaintiff need not provide "detailed factual allegations" to survive dismissal, but must plead more than mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action[.]"*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" but the court need not accept as true the complaint's legal conclusions. *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 570).

### III.

Plaintiff filed five objections to the R&R, ECF No. 19, each of which will be addressed in turn.

### A.

In his first objection, Plaintiff argues Judge Morris erred in concluding he insufficiently alleged that Defendants were *responsible* for infringing on his copyrighted works. ECF No. 19 at PageID.202–04. But Judge Morris did not err in applying the so-called "volitional conduct" requirement throughout her analysis of Plaintiff's pleading, so Plaintiff's first Objection will be overruled and the R&R will be adopted accordingly.

The "volitional conduct"[3] requirement is typically implicated in copyright infringement cases involving a defendant who operates an online service or mechanism that is "used by third parties to reproduce (or perform, display, or distribute) a copyrighted work." Robert C. Denicola,

---

[3] Scholars debate whether "volition" is an appropriate term for this direct copyright liability requirement. *See* Robert C. Denicola, *Volition and Copyright Infringement*, 37 CARDOZO L. REV. 1259, 1262–68 (2016) (noting that "volition" is traditionally used in tort to refer to the voluntariness of action whereas, in the copyright liability context, the requirement refers to "whether the defendant has actually engaged in all of the acts necessary to satisfy the elements of the cause of action for copyright infringement[,]" i.e.—whether Defendant actually copied).

*Volition and Copyright Infringement*, 37 CARDOZO L. REV. 1259, 1272 (2016). In these cases, a question naturally arises: who is responsible for copyright infringement? The third party that actually posts or copies a copyrighted work or the online service that provides a space for this infringement to occur? Federal courts have used the volitional conduct requirement to answer this question, and to properly categorize claims against *infringers* as *direct* copyright claims while categorizing claims against *providers* as *secondary* claims. *See id*; *Am. Broad. Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431, 455 (2014) (the distinction between direct and secondary liability would collapse if there were not a clear rule for determining whether *the defendant* committed the infringing act. The volitional-conduct requirement supplies that rule; its purpose is not to excuse defendants from accountability, but to channel the claims against them into the correct analytical track." (emphasis in original)). In this way, the volitional conduct requirement seeks to limit direct copyright infringement liability only when a non-infringing online provider is "directly linked to the specific work that has been copied." Robert C. Denicola, *Volition and Copyright Infringement*, 37 CARDOZO L. REV. 1259, 1272 (2016).

The first reference to "volition" in copyright law was made in a 1995 Northern District of California decision. *Id.* at 12654. In *Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, defendants operated a computer bulletin board service and allowed third parties to post. 907 F. Supp. 1361 (N.D. Cal. 1995). The *Netcom* Court held these defendants lacked the volition necessary to hold them liable for *direct* copyright infringement, reasoning the third-party posters—rather than the e-bulletin board defendants—were responsible for infringing on plaintiff's copyrights. *Id.* ("Although copyright is a strict liability statute, there should still be some element of volition or causation which is lacking where a defendant's system is merely used to create a copy by a third party.") Since its inception in 1995, alongside a boom of internet access

and technology, the volitional conduct requirement has gained widespread approval by federal courts. By 2014, Justices Scalia, Thomas, and Alito noted within their *American Broadcasting Companies, Inc. v. Aereo, Inc.* dissent that "every Court of Appeals to have considered [a] . . . service provider's direct liability for copyright infringement has adopted" the volitional conduct requirement. *Am. Broad. Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431, 453 (2014) (Scalia, J., dissenting) (*citing Fox Broadcasting Co. v. Dish Network LLC*, 747 F.3d 1060, 1066–1068 (9th Cir. 2014); *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121 (2nd Cir. 2008); *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549–550 (4th Cir. 2004); *Parker v. Google, Inc.*, 242 F. App'x 833, 836 (3d Cir. 2007)). The doctrine has only become more accepted since. *See*, *e.g.*, *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016); *BWP Media USA, Inc. v. T & S Software Associates, Inc.*, 852 F.3d 436, 439 (5th Cir. 2017); *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 668 (9th Cir. 2017); *Abko Music, Inc. v. Sagan*, 50 F.4th 309, 321 (2d Cir. 2022).

Despite its widespread acceptance, the volitional conduct rule is "hardly an accepted bedrock of copyright law." Robert C. Denicola, *Volition and Copyright Infringement*, 37 CARDOZO L. REV. 1259, 1260 (2016). As Justice Scalia's *Aereo* dissent conceded, the Supreme Court had not—and has not—directly "opined on the issue[.]"[4] *Am. Broad. Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431, 453 (2014) (Scalia J., dissenting). The Sixth Circuit[5] and this Court have not directly

---

[4] However, the *Aereo* dissent also noted that the Supreme Court's prior copyright cases were "fully consistent with a volitional-conduct requirement." *Am. Broad. Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431, 453 (2014) (Scalia J., dissenting).
[5] Although the Sixth Circuit has not *directly* adopted the volitional conduct requirement, several district courts within the Sixth Circuit classify the Sixth Circuit's decision in *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792 (6th Cir. 2005), as implicitly adopting the requirement. *See Average Joe's Ent. Grp., LLC v. SoundCloud, LTD.*, No. 3:16-CV-3294-JPM-JB, 2018 WL 6582829, at *2 (M.D. Tenn. Oct. 17, 2018). In *Bridgeport*, the Sixth Circuit held, generally, that one must *intentionally* copy to be liable for direct infringement. *See Bridgeport*, 410 F.3d at 802.

adopted the requirement, either.[6] However, several district courts within the Sixth Circuit have adopted the volitional conduct requirement. *See, e.g.*, *Stokes v. Brinor, Inc.*, No. 1:22-CV-973, 2023 WL 4593776 (N.D. Ohio July 18, 2023); *Average Joe's Ent. Grp., LLC v. SoundCloud, LTD.*, No. 3:16-CV-3294-JPM-JB, 2018 WL 6582829 (M.D. Tenn. Oct. 17, 2018); *Kremer*.

So what satisfies the volitional conduct requirement to hold online servicers directly liable for copyright infringement? The answer is somewhat unclear, and varies by Circuit, but:

> [a]n analysis of the volition cases indicates that courts are likely to conclude that there is an absence of volition when the only means available for a service provider to prevent the infringement is to police the actions of its individual customers. Thus, volition requires a relationship between the system owner and the copyrighted work that will permit the owner to prevent infringement of the work without the necessity of monitoring the behavior of third parties.

Robert C. Denicola, *Volition and Copyright Infringement*, 37 CARDOZO L. REV. 1259, 1276 (2016). District court decisions within the Sixth Circuit have held that plaintiffs must show the defendant "intentionally and knowingly" copied the copyrighted work. *Average Joe's Ent. Grp., LLC v. SoundCloud, LTD.*, No. 3:16-CV-3294-JPM-JB, 2018 WL 6582829 (M.D. Tenn. Oct. 17, 2018) (citing *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 401 (6th Cir. 2007); *see also Kremer*, at *7.

Here, Judge Morris did not clearly err in applying the volitional conduct requirement to Plaintiff's direct liability copyright claim.[7] The requirement has been adopted by numerous district

---

[6] No Sixth Circuit or Eastern District of Michigan decision has rejected the volitional conduct requirement, though.

[7] Judge Morris, consistent with other federal courts, referred to this volitional conduct requirement as "causation." ECF No. 18 at PageID.193 (citing *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017)). But this term is technically imprecise. Causation, as used in the traditional sense, refers to the connection between the tort and the plaintiff's harm. *See* Robert C. Denicola, *Volition and Copyright Infringement*, 37 CARDOZO L. REV. 1259, 1269 (2016). But, as used by Judge Morris and other federal courts in the copyright context, "causation" or the "volitional conduct" requirement more accurately refers to the connection between the tort and the defendant's actions. *See id*.

- 13 -

courts within the Sixth Circuit, has been impliedly adopted by the Sixth Circuit itself, and is consistent with a growing "national trend" to limit online servicer direct copyright infringement liability when third parties are primarily responsible for the copying. *Average Joe's*, 2018 WL 6582829, at *2 (citing *Bridgeport*, 508 F.3d at 401). Plaintiff does not argue to the contrary. *See* ECF No. 19 at PageID.202–04. Instead, Plaintiff argues he plausibly pleaded Defendants' volitional conduct. *Id.* at PageID.203 ("Plaintiff's Complaint states that Defendants *are responsible* for copyright infringement[.]" (emphasis added)).

In this way, Plaintiff does not identify a flaw within Judge Morris's analysis, and instead repeats the same arguments he made in his response to Defendants' Motion to Dismiss—that the face of his Complaint states a plausible direct copyright infringement claim against Defendants. *Compare* ECF No. 16 at PageID.99 *with* ECF No.19 at PageID.203. But Judge Morris already rejected this argument, after thoroughly reviewing Plaintiff's Complaint and correctly applying governing law. Thus, Plaintiff's first objection is without merit. *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.").

Even if Plaintiff's first objection was proper, it would still be overruled. Judge Morris analyzed each allegation within Plaintiff's Complaint in turn, explaining why all were insufficient to plausibly plead Defendant's direct copyright infringement liability. First, Plaintiff alleged that Defendants *displayed* his copyrighted illustrations without authorization. But Judge Morris correctly concluded that, as a matter of common sense, merely displaying a copyrighted work does not plausibly suggest that the displayer knew the work was copyrighted. ECF No. 18 at PageID.196 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Indeed, Judge Morris noted that Plaintiff's

Complaint does not indicate whether Defendants selected the works that appeared on their website. *See id.* And although Plaintiff also alleged Defendants *marketed, advertised, and sold* merchandise bearing his copyrighted illustrations, ECF No. 1 at PageID.3., Judge Morris correctly concluded that "Rule 8 requires more"—Plaintiff did not, for example, allege that Defendants "design[ed], manufacture[d] or even select[ed] the products on their website." [8] ECF No. 18 at PageID.196–97.

Plaintiff did not state a valid direct copyright infringement claim against Defendants. His first objection to the R&R will be overruled.

**B.**

In his second objection, aside from restating his contention that he plausibly pleaded a copyright infringement claim, Plaintiff argues that Judge Morris erred in considering secondary copyright infringement liability at the motion to dismiss stage. ECF No. 19 at PageID.204–06. In Plaintiff's view, issues of vicarious and contributory copyright infringement arise under the Digital Millennium Copyright Act's (DMCA) safe harbor provisions, which serve as affirmative defenses available to Defendants, and not pleading standards Plaintiff is subject to. *Id.* at PageID.206. But Plaintiff conflates the DMCA and general theories of copyright infringement liability. His second objection will be overruled.

Enacted in 1998, the DMCA added four "safe harbors" that allow qualifying service providers (SPs) to limit their copyright infringement liability. To qualify for protection under any of the DCMA safe harbors, the defendant must first qualify as an SP, statutorily defined as "an entity offering the transmission, routing, or providing of connections for digital online

---

[8] Plaintiff argues, in his first objection, that his Complaint also alleged Defendants profited from *distributing* merchandise bearing his copyrighted illustrations. ECF No. 19 at PageID.203 (citing ECF No. 1 at PageID.3–4). But this allegation is irrelevant to Defendants' *direct* copyright infringement liability and is, instead, an element of secondary, vicarious copyright liability discussed in greater detail *infra* Section III.B. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).

communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received" or the "provider of online services or network access, or the operator of facilities therefor[.]" 17 U.S.C. § 512(k)(1). Under the DMCA safe harbors, these providers—and these providers only—are immune from monetary damages, and most injunctive relief, for (1) transitory services;[9] (2) system catching;[10] (3) information storage at the directions of users;[11] and (4) information and location tools.[12] 17 U.S.C. § 512(a)–(d). To Plaintiff's point, the third and fourth safe harbors "are conceptually quite similar

---

[9] This first safe harbor, "in general terms, . . . limits the liability of [SPs] in circumstances where the providers merely acts as a data conduit, transmitting digital information from one point on a network to another at someone else's request. This limitation covers acts of transmission, routing, or providing connections for the information, as well as the intermediate and transient copies that are made automatically in the operation of the network." JAMES BOYLE & JENNIFER JENKINS, INTELLECTUAL PROPERTY: LAW & THE INFORMATION SOCIETY 543 (5th ed. 2021). For a list of the five conditions that an SP must satisfy to be immune under this safe harbor, see 17 U.S.C. § 512(a).
[10] This second safe harbor "limits the liability of [SPs] for the practice of retaining copies, for a limited time, of material that has been made available online by a person other than the provider, and then transmitted to a subscriber at his or her direction. The [SP] retains the material so that subsequent requests for the same material can be fulfilled by transmitting the retained copy, rather than retrieving the material from the original source on the network." JAMES BOYLE & JENNIFER JENKINS, INTELLECTUAL PROPERTY: LAW & THE INFORMATION SOCIETY 543 (5th ed. 2021). For a list of the specific conditions that an SP must satisfy to be immune under this safe harbor, see 17 U.S.C. § 512(b).
[11] This third DMCA safe harbor "limits the liability of [SPs] for infringing material [appearing] on [their] websites[.]" To be eligible for the limitation, the SP must not have actual knowledge of the infringement; and the infringing activity must not be otherwise apparent. 512(c)(1)(A)(i)–(ii). If the SP gains actual knowledge or becomes aware of apparent infringement, it must "act[] expeditiously to remove, or disable access to" the infringed material. 157 U.S.C. § 512(c)(1)(A)(iii). Additionally, the SP cannot profit from the infringing activity and must quickly remove the infringing material or block access to it when notified. 17 U.S.C. § 512(c)(1)(B)–(C). Further, the SP must designate an agent to receive and process copyright infringement claims. 17 U.S.C. § 512(c)(2); see also JAMES BOYLE & JENNIFER JENKINS, INTELLECTUAL PROPERTY: LAW & THE INFORMATION SOCIETY 544–45 (5th ed. 2021).
[12] This last safe harbor "relates to hyperlinks, online directories, search engines and the like" and generally "limits liability for the acts of referring or linking users to a site that contains infringing material by using such information location tools." JAMES BOYLE & JENNIFER JENKINS, INTELLECTUAL PROPERTY: LAW & THE INFORMATION SOCIETY 545 (5th ed. 2021). For a list of the specific conditions that an SP must satisfy to be immune under this safe harbor, see 17 U.S.C. § 512(d).

to . . . contributory infringement claim[s]" because a defendant will not be secondarily liable for contributory infringement if they lack knowledge of the infringing activity and, if the defendant qualifies as an SP, will similarly be immune from infringement liability under 17 U.S.C. § 512(c) and (d) if they lack actual knowledge or awareness of the infringing activity. R. Anthony Reese, *The Relationship Between the ISP Safe Harbors and the Ordinary Rules of Copyright Liability,* 32 COLUM. J.L. & ARTS 427, 431–32 (2009). But this is where the similarities stop. The DMCA safe harbors are affirmative defenses that SP-defendants can assert, *reactively*, to a copyright-claimant's complaint. Separate and apart from these DMCA safe harbors, a plaintiff must *proactively* satisfy Rule 8's notice-pleading standards and state a copyright claim upon which relief can be granted. If, as here, a plaintiff does not plausibly allege *any* theory of copyright liability, then Rule 12(b)(6) warrants dismissal, regardless of statutory safe harbors.

       The R&R's *only* reference to the DCMA safe harbors lies within a footnote, in which Judge Morris *agreed with Plaintiff*, *see* ECF No. 16 at PageID.100, and rejected Defendants' argument that these safe harbors warrant dismissal because, Judge Morris concluded "the DCMA's safe harbor provisions are an affirmative defense, and plaintiffs need not anticipate affirmative defenses in their pleadings." ECF No. 18 at PageID.198 n. 5. Separate and apart from the DCMA safe harbors, Judge Morris concluded that Plaintiff failed to state a valid (1) *direct* copyright claim against Defendants; (2) failed to state a valid *secondary contributory* copyright claim because he did not allege Defendants induced the third-party infringers; and (3) failed to state a valid *secondary vicarious* copyright claim because he did not allege Defendants "declined" to stop or limit third parties from infringing. ECF No. 18 at PageID.185–97. As discussed *infra* Section III.A., Plaintiff has not demonstrated clear error in reaching the first conclusion and, aside from

arguing their improper consideration, Plaintiff does not argue the latter two conclusions are erroneous. Plaintiff's second objection will be overruled.

### C.

Plaintiff's third objection does nothing more than re-assert his first, arguing that he plausibly pleaded Defendants' direct copyright infringement. ECF No. 19 at PageID.206–08. Plaintiff's third objection points to his Complaint and repeats the same arguments he raised in response to Defendants' Motion to Dismiss, both of which were considered by Judge Morris before recommending dismissal. *Compare* ECF No. 16 at PageID.98–99 (arguing plausible copyright infringement claim because complaint "establishes that Plaintiff owns the copyrights to the four illustrations . . . and that Defendants violates Plaintiff's exclusive rights . . . through their unauthorized display, use reproduction, and monetization") *with* ECF No. 19 at PageID.206–07 (arguing plausible copyright infringement claim because complaint "alleges that Plaintiff owns a valid copyright in the four illustrations found on Defendant[s'] website" and "that Defendants violated this copyright by preparing derivative works . . . and reproducing, publicly displaying, and distributing the illustrations on their website and merchandise."). For the same reasons his first objection will be overruled, so too will his third.

### D.

Similarly, Plaintiff's fourth objection does nothing more than reassert his second objection, arguing that Judge Morris erred in analyzing secondary copyright infringement liability, because this "impos[es] an evidentiary standards onto the pleadings and anticipat[es] affirmative defenses that might be pled by Defendants." ECF No. 19 at PageID.208. But, for the reasons discussed *infra* Section III.B, Judge Morris did not err in considering these theories—which only served as *additional* ways Plaintiff could have stated a valid copyright infringement claim—and her

conclusions that Plaintiff had not sufficiently alleged either theory was correct. Thus, Plaintiff's fourth objection will also be overruled.

E.

Plaintiff's fifth and final objection concerns Judge Morris's overall conclusion, that Plaintiff "fail[ed] to plausibly allege that the Defendants infringed his copyrights" and her recommendation that this Court dismiss his complaint without prejudice. ECF No. 19 at PageID.209 (quoting ECF No. 18 PageID.197). This broad "in sum" objection will be denied as improper. *See Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) ("A general objection to the entirety of the magistrate's report has the same effects as would a failure to object."); *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.").

In sum, Plaintiff's Complaint was all bait and no hook. Although Plaintiff sufficiently alleged that someone, somewhere, somehow infringed on his four copyrighted fish illustrations, he insufficiently alleged that Defendants directly infringed. Nor did he sufficiently allege that Defendants are secondarily liable under either vicarious or contributory theories. His objections are overruled, so the R&R will be adopted, Defendants' Motion to Dismiss will be granted, and Plaintiff's Complaint will be dismissed without prejudice.[13]

---

[13] Plaintiff argues this Court grant him leave to amend his Complaint in lieu of dismissing it. ECF Nos. 19 at PageID.209; 21 at PageID.223. But this argument is untimely because it was not made prior to objecting to the R&R. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (noting parties cannot "raise at the district court stage new arguments or issues that were not presented" before the R&R was issued).

## IV.

Accordingly, it is **ORDERED** that Plaintiff's Objections, ECF No. 19, are **OVERRULED.**

Further, it is **ORDERED** that Magistrate Judge Patricia T. Morris's Report and Recommendation, ECF No. 18, is **ADOPTED.**

Further, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 13, is **GRANTED.**

Further, it is **ORDERED** that Plaintiff's Complaint, ECF No. 1, is **DISMISSED WITHOUT PREJUDICE.**

**This is a final order and closes the above-captioned case.**

Dated: March 5, 2024                              s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge